UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| VAUGHN GARY MAXFIELD,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN VANDERRA, Captain, in his individual and official capacity; WARDEN DARIN YOUNG, in his individual and official capacity; LIEUTENANT S. LEVY, in his individual and official capacity; SERGEANT PRESTON PERRETT, in his individual and official capacity; ARTHUR ALLCOCK, Former Assistant Warden, in his individual and official capacity; and ANGELA STEINEKE, Unit Coordinator, in her individual and official capacity,<br><br>Defendants. | 4:18-CV-04120-KES<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND 1915A SCREENING |

Plaintiff, Vaughn Gary Maxfield, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. This court granted Maxfield leave to proceed in forma pauperis (Docket 9) and he paid his initial filing fee on January 16, 2019. Maxfield amended his complaint (Docket 19) and later submitted a typed version of his amended complaint (Docket 25).[1]

The court granted Maxfield's motion for service of his amended complaint. Docket 31.[2] Summonses were returned unexecuted for defendants Arthur Allcock and S. Levy. Docket 37. This court will screen Maxfield's claims

---
[1] Maxfield refers to Docket 19 as his "Second Amended Complaint." The court will refer to Docket 19 as his amended complaint.
[2] This court did not previously perform a 28 U.S.C. § 1915A screening on Maxfield's amended complaint.

against Allcock and Levy under 28 U.S.C. § 1915A in this order. Defendants Preston Perrett, Angela Steineke, Ryan Vanderra, and Darin Young move to dismiss for failure to state a claim. Docket 43. Maxfield opposes the motion. Dockets 45, 49, 56. Maxfield also filed a motion to amend/add defendants (Docket 55), a motion for service (Docket 57), and a motion to appoint counsel (Docket 58).

## FACTUAL BACKGROUND

The facts as alleged in Maxfield's amended complaint are: From May 14, 2017, through October 8, 2017, Maxfield was tortured at the Walworth County jail. Docket 19 ¶ 18. When Maxfield was transferred to the Jameson Annex at the South Dakota State Penitentiary (SDSP), the Walworth County jail employees "instructed and coached" the SDSP staff to cover up the "atrocities which were imposed[.]" *Id.* ¶ 19.

On October 10, 2017, Maxfield had over 40 pages of legal work, medical records, and grievance copies and asked several times to place his work in property. *Id.* ¶¶ 21-22. Lt. S. Levy reassured Maxfield that his work would be placed in property. *Id.* ¶ 22. Later, Maxfield had another 12 pages of new legal work and Captain Vanderaa reassured Maxfield that his new work would be placed into property. *Id.* ¶¶ 23-24. On October 20, 2017, Maxfield sent a kite for his legal work and he never received a response. *Id.* ¶ 25. On October 31, 2017, Unit Manager Derrick Bieber told Maxfield that his legal work was not in property. *Id.* ¶ 26. Maxfield believes Levy, Perrett, and Vanderra violated his

rights guaranteed under the First, Eighth, and Fourteenth (Equal Protection Clause) Amendments. *Id.* ¶ 27.

On November 2, 2017, Maxfield turned in grievances to Unit Coordinator Steineke before attending a church service. *Id.* ¶ 30. After the service, Steineke and Former Assistant Warden Allcock gave him "dead stares" as he walked through the metal detector. *Id.* Maxfield believes these stares were to intimidate him and when Allcock scanned his grievances he believes the scene was "muscled[.]" *Id.* ¶ 31. Because his legal work had been lost, Maxfield began documenting in writing his testimony about the torture he experienced. *Id.* ¶ 32. On November 7, 2017, Maxfield sent this testimony to the ACLU with an address that Steineke provided to him. *Id.* ¶ 33. On November 13, 2017, Maxfield asked Steineke for the responses to his November 2, 2017 grievances. *Id.* Maxfield did not know the grievance process at SDSP. *Id.* ¶ 34. Maxfield states that the conversation began when he asked Steineke where his grievances were:

> Steineke looked up at Mr. Maxfield with this blank stare stating quote 'What grievances?' Mr. Maxfield just looks at her in disbelief than [sic] tells her quote 'I just turned in 2 grievances to you a week and a half Ago[.]' She responds 'Where's your copies?' Mr. Maxfield responds 'You never gave me a copy[.]' She responds 'It's your job to ask for a copy when you first turn the grievance in, not mine.'

*Id.* After this exchange, Maxfield asked for another grievance form and Steineke "slam[med] her keyboard onto the desk 3 or 4 times and flail[ed] her hands" in an intimidating way to try to deter Maxfield from getting a new grievance form. *Id.* ¶ 35. Maxfield believes that Allcock, Steineke, Perrett, Vanderra, and Levy

3

were instructed to cover up the torture that took place at the Walworth County jail. *Id.* ¶ 37. Maxfield believes Allcock should be held liable in his supervisory capacity because he knew of this conspiracy/violation and did not prevent it and because he was handed grievance forms. *Id.* ¶39.

On November 22, 2017, the letter Maxfield had sent to the ACLU was returned to him marked "return to sender" and it had already been opened. *Id.* ¶ 41. Maxfield believes Steineke gave him the incorrect mailing address. *Id.* ¶ 42. He states that his legal mail cannot be opened without him being present and it must be "stamped with an acknowledgment of receipt for staff and Mr. Maxfield to sign to verify it was opened in his presence." *Id.* ¶ 43. Maxfield believes that Steineke intentionally gave him the wrong address so the SDSP staff could read his testimony about what happened at the Walworth County jail. *Id.* ¶ 44.

On November 23, 2017, when Maxfield asked for another grievance form from Steineke she responded "No wonder why that jail did what they did to you[.]" *Id.* ¶ 45, Maxfield believes these actions constitute conspiracy to violate his First, Eighth, and Fourteenth Amendment rights. *Id.* ¶¶ 49-50. He also believes these actions caused him "intentional infliction of emotion distress[,] [] loss of enjoyment of life[,] [] severe underlying post traumatic stress disorder[,] [] extreme fear and anxiety[,] and] [] permanent, physical, mental and emotional damage[.]" *Id.* ¶ 52. Maxfield believes that he was retaliated against for trying to turn in grievance forms. *Id.* ¶¶ 54-58. He argues that he has a right to use the grievance process and was retaliated against by receiving the wrong address,

acting like he did not already turn in grievances, and by SDSP staff opening his legal mail. *Id.* Maxfield states that "Minnehaha County developed, followed and maintained policies that show[] cruel and unusual punishment and denial of Equal Protection[.]" *Id.* ¶ 60. Maxfield asserts three claims: 1) conspiracy to violate his First, Eighth, and Fourteenth Amendment rights; 2) retaliation; and 3) the Minnehaha County jail's policies are unconstitutional. Docket 19 at 10, 12, 13.[3] He seeks monetary damages but does not ask for injunctive relief. *See id.* at 14, 15. Defendants Perrett, Steineke, Vanderra, and Young move to dismiss for failure to state a claim. Docket 43. Maxfield opposes this motion. Dockets 45, 49, 56.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Inferences are construed in favor of the non-moving party. *Whitney v. Guys,*

---

[3] Minnehaha County is not listed as a defendant in Maxfield's amended complaint. Docket 19. Pending before the court is Maxfield's motion to add defendants Minnehaha County and the State of South Dakota in their official and individual capacities. Docket 55.

*Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)).

Pro se complaints, " 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this standard, a pro se complaint must "allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The court is not required to " 'supply additional facts, nor will [it] construct a legal theory . . . that assumes facts that have not been pleaded.' " *Id.* (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x. 926, 927 (8th Cir. 2008); *see also Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

## LEGAL ANALYSIS

I. **Motion to Dismiss**

    A. **Official Capacity Claims**

Maxfield has sued each of the defendants in their individual and official capacities. Docket 19 at 1. All of the defendants are employees of the state of

South Dakota. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Maxfield only requests monetary damages. Docket 19 at 14-15. Consequently, because Maxfield has sued defendants in their official capacities, Maxfield has asserted a claim for money damages against the state of South Dakota. The state of South Dakota has not waived its sovereign immunity. Thus, to the extent Maxfield seeks to hold defendants liable in their official capacities for money damages, the court finds that all of the defendants are protected by sovereign immunity and are entitled to judgment as a matter of law. Because Maxfield is not seeking injunctive relief from the defendants in their official capacities, the claims against the defendants in their official capacities are dismissed.

### B. Individual Capacity Claims

#### 1. Conspiracy

In Count I, Maxfield asserts that the defendants engaged in a conspiracy to violate his First, Eighth, and Fourteenth Amendment rights. Docket 19 at 10. Maxfield claims the defendants "conspired with Walworth County jail and probation employees to deprive Mr. Maxfield of his constitutional rights by [] disposing of all his legal work, medical records, and 5 original copies of grievances from the Walworth County jail in an attempt to cover up what occurred in Walworth County[.]" *Id.* ¶ 50.

To plead a civil conspiracy under § 1983, Maxfield must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v. Schenck*, 700 F.3d 340, 360-61 (8th Cir. 2012) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). Although a plaintiff can use circumstantial evidence to show a conspiracy, a plaintiff bringing a § 1983 conspiracy claim must allege "specific facts tending to show" that the defendants reached an agreement to deprive the plaintiff of a constitutional right or a meeting of the minds. *See Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). Thus, Maxfield must allege with particularity "facts that the

defendants reached an agreement." *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 582 (8th Cir. 2006) (internal quotation omitted). A plaintiff must plead "more than the mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy[.]" *Myers v. Morris*, 810 F.2d 1437, 1453 (8th Cir. 1987) (*overruled on other grounds by Burns v. Reed*, 500 U.S. 478 (1991)).

Here, Maxfield states that the defendants "conspired with Walworth County Jail" and that "upon information and belief Walworth County State Government Employees instructed and coached [SDSP] Staff to aid in the assistance of covering up the atrocities which were imposed upon him while in Walworth County." Docket 19 ¶¶ 19, 48-50. Maxfield does not allege particular facts to show that the defendants had reached an agreement with Walworth County or specific facts that tend to show they had a meeting of the minds. *Reasonover*, 447 F.3d at 582; *Murray*, 595 F.3d at 870. The court finds Maxfield's assertions to be legally conclusive and his conspiracy claims against defendants are dismissed for failure to state a claim upon which relief may be granted.

### 2. Retaliation

In Count II, Maxfield asserts that defendants retaliated against him by disposing of his grievances, opening his "legal mail" and acting as if he never turned in his grievances. Docket 19 ¶¶ 55-59. To prevail on a retaliation claim, Maxfield is required to demonstrate that: (1) he was engaged in constitutionally protected conduct; (2) an official took actions against him that would deter a

similarly situated individual from exercising his constitutional rights; and (3) the official's retaliatory actions were motivated by Maxfield's constitutionally-protected conduct. *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir. 2001). Maxfield asserts that his letter to the ACLU was returned with a "return to sender" stamp and was not opened within his presence. Docket 19 ¶ 41. In *Jensen v. Klecker*, the court held that the letter to the inmate from the ACLU was not entitled to First Amendment protection because it was not within the "parameters of the attorney-client privilege." 648 F.2d 1179, 1182 (8th Cir. 1981).

In *Beaulieu v. Ludeman*, the plaintiff alleged a retaliation claim when the prison officials transferred him and then opened his legal mail. 690 F.3d 1017, 1037 (8th Cir. 2012). The plaintiff argued that by opening his legal mail, his claims were "at risk of being mooted" and that litigation would be more difficult. *Id.* (internal quotation marks omitted). The court held that " ' an isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access to the courts, does not rise to a constitutional violation.' " *Id.* (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). To successfully claim a denial of access to the courts " 'an inmate must demonstrate that he suffered prejudice' from the 'inadvertent opening of legal mail.' " *Gardner*, 109 F.3d at 430 (quoting *Berdella v. Delo*, 972 F.2d 204, 210 (8th Cir. 1992)).

Here, Maxfield claims he sent a letter to the ACLU, and the letter was returned with a stamp of "return to sender." Docket 19 ¶ 41. Maxfield has not

asserted facts that would make his letter to the ACLU fall within the attorney-client privilege, and without that, his letter is not considered to be legal mail. *See Jensen*, 648 F.2d at 1182. Even if this court considered the letter to the ACLU to be legal mail, Maxfield has not asserted that he was prejudiced by the opening of it without his presence. Maxfield has not alleged facts that support a retaliation claim based on his First Amendment right of access to the courts.

Maxfield also claims that defendants retaliated against him by disposing of his copies of the grievances or acting as if he did not turn in his grievances. Neither of these claims rise to a constitutional violation. When Maxfield was transferred from Walworth County Jail to SDSP he was assured that copies of his grievances were put into property. Docket 19 ¶¶ 20-26. He was later told they were not there. *Id.* The United States Supreme Court held that negligent deprivations of property and even intentional deprivations of property do not violate the Due Process Clause of the Fourteenth Amendment when the state has adequate postdeprivation remedies. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id.* This court has previously stated that under South Dakota law, a plaintiff may bring a conversion action in state court for loss of property. *Dalrymple v. Dooley*, 2014 WL 1246476, at *6-8 (D.S.D. Mar. 25, 2014) (asserting a constitutional deprivation from the missing items of outgoing mail). Because Maxfield has a

postdeprivation remedy under South Dakota law and has not claimed that the prison officials refused to "provide a suitable postdeprivation remedy," his retaliation claim due to lost copies of his grievances is dismissed for failure to state a claim. *Hudson*, 468 U.S. at 533.

Maxfield claims that he turned in grievances and defendants acted as if he had not. Docket 19 ¶¶ 34-36. In *Buckley v. Barlow*, the Eighth Circuit held that an inmate failed to state that a constitutional right was being violated when he asserted that the officials failed to process his grievances. 997 F.2d 494, 495 (8th Cir. 1993); *see cf. Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (stating that the federal grievance regulations providing for an administrative remedy procedure do not a create liberty interest in access to that procedure."). " '[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment.' " *Buckley*, 997 F.2d at 495 (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (upheld by *Flick*, 932 F.2d at 729)). A plaintiff must allege more than a defendant's failure to process the grievances to bring an action under § 1983. *Id.* Maxfield's retaliation claim is based on defendants acting as if he had not submitted grievances, shortly after he submitted new grievances. This alone does not amount to a constitutional violation. Thus, this claim is dismissed for failure to state a claim upon which relief may be granted.

### 3. Unconstitutional Policy

In Count III, Maxfield claims that "Minnehaha County developed, followed and maintained policies that show[] cruel and unusual punishment and denial of equal protection" and failed to " adequately train prison staff[.]" Docket 19 ¶¶ 60-61.[4] "In general, 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a respondeat superior theory of liability." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (citing *Monnell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To impose § 1983 liability on a local government body, a plaintiff must show that an official policy or widespread practice caused a deprivation of a constitutional right. *Monnell*, 436 U.S. at 690-91. Here, Maxfield states that Minnehaha County has developed policies that violate the Eighth and Fourteen Amendments. Maxfield does not state which policy deprived him of his constitutional rights and does not demonstrate how that policy violated his rights. Maxfield's statements are legal conclusions that are not supported by the alleged facts. Because it would be futile to allow Maxfield to amend his

---

[4] Minnehaha County is not currently a defendant in this lawsuit. In Docket 55, Maxfield moves to add Minnehaha County and the State of South Dakota as defendants. That motion is denied because the *Monnell* liability claim that Maxfield asserts against Minnehaha County fails to state a claim and the State of South Dakota has not waived its sovereign immunity. *See Will*, 491 U.S. at 66 (holding that the Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity).

complaint to add Minnehaha County as a defendant, his motion to amend is denied.

### 4. Intimidation

Maxfield asserts facts of intimidation ("dead stares" and a "muscled scene") that he claims are to deter him from filing grievances. Docket 19 ¶ 30. "Verbal threats and name calling usually are not actionable under § 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338-39 (8th Cir. 1985)). In *McDowell*, the plaintiff claimed he was harassed generally and harassed in order to dissuade him from filing a grievance. *Id.* The court found such verbal threats to be insufficient to state a claim under § 1983. *Id.* Maxfield's claims of general harassment do not amount to a constitutional violation.

## II. 1915A Screening

Defendants Allcock and Levy have not been served. Docket 37. This court will conduct a 1915A screening on the claims against them.

### LEGAL STANDARD

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson*, 551 U.S. at 94; *Bediako*, 354 F.3d at 839. Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin*, 780 F.2d at 1337; *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992

14

F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If it does not contain these bare essentials, dismissal is appropriate. *Beavers*, 755 F.2d at 663. *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555; *see also Abdullah*, 261 F. App'x at 927 (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

## LEGAL ANALYSIS

### A.  Official Capacity Claims

Maxfield seeks monetary damages against Allcock and Levy in their individual and official capacities. Docket 19 at 1. At the time Maxfield filed his lawsuit, Allcock and Levy were employees of the state of South Dakota, thus Maxfield asserts a claim against the state of South Dakota. Because the state has not waived its sovereign immunity, Maxfield's claims against Allcock and

Levy in their official capacities are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Will*, 491 U.S. at 66. (holding that the Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity).

### B. Individual Capacity Claims

#### 1. Retaliation

Maxfield claims that Levy retaliated against him by assuring him that copies of his grievances would be saved in property. Docket 19 ¶ 22. Maxfield's copies of his grievances could not be found in property when he asked for them. *Id.* To prevail on a retaliation claim Maxfield is required to demonstrate that: (1) he was engaged in constitutionally protected conduct; (2) an official took actions against him that would deter a similarly situated individual from exercising his constitutional rights; and (3) the official's retaliatory actions were motivated by Maxfield's constitutionally-protected conduct. *Carroll*, 262 F.3d at 850.

This court has already found that Maxfield failed to assert that a constitutional right had been violated when defendants allegedly failed to keep copies of his grievances. *See* I.B.ii. A prison grievance procedure is merely a procedural right and does not rise to a protected constitutional right. *See Buckley*, 997 F.2d at 495; *Azeez*, 568 F. Supp. at 10. Maxfield has failed to show that Levy has retaliated against Maxfield's constitutionally protected rights, thus Maxfield's retaliation claim against Levy is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Conspiracy

Maxfield asserts that Allcock and Levy engaged in a conspiracy to violate his First, Eighth, and Fourteenth Amendment rights. Docket 19 ¶¶ 47-50. Maxfield claims the defendants "conspired with Walworth County jail and probation employees to deprive Mr. Maxfield of his constitutional rights . . . in an attempt to cover up what occurred in Walworth County[.]" *Id.* ¶ 50.

To plead a civil conspiracy under § 1983, Maxfield must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers*, 700 F.3d at 360-61 (citation omitted). Maxfield does not allege particular facts that Allcock and Levy had reached an agreement with Walworth County or specific facts that tend to show they had a meeting of the minds. *Reasonover*, 447 F.3d at 582; *Murray*, 595 F.3d at 870. The court finds Maxfield's assertions to be legally conclusive and his conspiracy claims against Allcock and Levy are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Supervisor Liability

Maxfield believes Allcock should be held liable in his supervisory capacity because he knew about the conspiracy/violation and did not prevent the violation. Docket 19 ¶ 39. "In the section 1983 context, supervisor liability is limited. A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions." *Boyd v. Knox*, 47 F.3d 966, 968

(8th Cir. 1994). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676. Here, Maxfield fails to allege facts that show Allcock participated in a constitutional violation. Also, this court has found that Maxfield's claims regarding his lost copies of grievances and alleged conspiracy do not amount to constitutional violations. Because Maxfield has not alleged facts to show that Allcock was personally involved in a constitutional violation, Maxfield's supervisory liability claim against Allcock is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Thus, it is ORDERED:

1. That defendants' motion to dismiss (Docket 43) is granted.
2. That Maxfield's claims against Levy and Allcock are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).
3. That Maxfield's motion to amend/ add defendants (Docket 55) is denied.
4. That Maxfield's complaint is dismissed without prejudice and judgment entered in favor of the defendants.
5. That Maxfield's remaining motions (Dockets 57 and 58) are denied as moot.

Dated March 19, 2020.

BY THE COURT:
/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE